Good morning. Robert Hamilton on behalf of Appellant Defendant Rafael Romero-Duarte. Based on the four corners of the affidavit, the wiretap affidavit in this case, there was an insufficient showing of necessity, both on grounds that the affidavit didn't fully explain the need for it, and which is under a de novo standard of review, and also under the abuse of discretion standard that the wiretap was not necessary. And there's three reasons that it comes down to, and that is CRI 1, CRI 2, and SOI, the source of information. And I'd like to start with CRI 1, because I didn't cover, come back and cover CRI 1 in my reply brief as much as I did CRI 2. Let me just, I mean, I understand why you want to talk about the individual informants, but we've got a 77-page affidavit that outlines in exhaustive detail all of the investigative tools that had been employed before the wire was sought, including these informants that you want to talk about. The Supreme Court tells us that we look, and our own Ninth Circuit authority says we look at the totality of all of the efforts that were made in order to make the necessity determination. It seems to me that you've got a pretty tough hill to climb here, given the extent of the surveillance and investigative activities that are outlined in that affidavit and why the government concluded that short of a wire they weren't going to get to the higher-ups in this Mexican drug trafficking organization. Well, I hope to distinguish between length and quantity of information versus quality of information. And really, I mean, that's what they can do. They can put, I'm not here to talk about, you know, trash pulls could be effective. And I say that trial counsel has this sort of shotgun approach. He raises all these things. The bread and butter in this, what I think makes this matter and what the necessity problem is, is that the CRIs, which are an effective tool in some cases and not in others, and the question is if the CRIs are enough along with the source of information, you know, the rest of the 77 pages doesn't matter. Under a totality of circumstances analysis? I mean, I understand the divide and conquer approach, that that's what you've got to do. But the problem is that we look at the whole and not just, you know, what the effectiveness of one particular informant may or may not have been. Right. No, but I think it matters, like, how good that informant or informants were and that part of the totality of circumstances is these three individuals. Well, how do you explain the fact that the DTO was very suspicious of and reluctant to embrace the undercover agent that they were trying to insert into the organization? I mean, this was an organization that, according to the affidavit, was very insular in exposing its command officers to actual involvement in the transactions themselves. Well, that's where I disagree, in getting into the affidavit and starting with CRI-1, for example. But that was the testimony at trial, counsel. I mean, are you suggesting that the facts were somehow other than what the ---- No. Well, looking at the four corners of the affidavit, and I'll just pull stuff straight from the affidavit, the investigation comes from the top down, and they believe this guy Carrillo is supplying drugs to this Duarte and Rivera is the other big guy. Well, CRI-1 makes a purchase of drugs directly from Carrillo in December of 2000. I forget if that purchase was ---- Yeah, CRI-1 on December 14, 2007 purchased a quarter pound of meth directly from Carrillo and his right-hand man Batista. So that's not insulating the leadership. He's one of the big guys. He sells directly to them. And important to note is the government suggests that because Carrillo didn't trust the undercover agent and because Carrillo wouldn't respond to the undercover agent, that CRI-1 and the undercover were out. I don't disagree that the undercover was out. But if you read the affidavit on ---- you know, the government refers to SCR-822, but SCR-798 also lays this out. On April 1, 2008, Carrillo won't return the undercover's calls. But CRI-1 talks to Carrillo later in April, I think it's April 28, and Carrillo sets CRI-1 up with Rivera to buy meth. Now, later, after they meet, after Rivera and CRI-1 meet, Rivera changes his number. And then it's like, okay, well, now CRI-1 is out. But there is nothing in the affidavit explaining ---- Rivera changed his number and wouldn't give it to CRI-1, right? He would. It was fine. They were talking about a deal. They didn't make the deal go through. Then Rivera just changes the number. Right. And the police say, well, he can't go call the new number. It would be suspicious. CRI-1 can't call the new number of Rivera because it would be suspicious. But he still has Carrillo. CRI-1 has Carrillo's phone 3 still. And in August 2008, CRI-1 makes a purchase of 3 ounces of cocaine from Batista. And now at the time, Batista says, hey, I don't work for Carrillo anymore. Carrillo thinks I lost some drugs for him. But the affidavit says, we don't believe this, that it's a typical practice that they insulate their leadership from sales, and they think Batista is still working for Carrillo. So there's nothing to explain why CRI-1, who is purchasing from the top people ---- they were coming at this from the top down ---- why CRI-1 would not recontact Carrillo to set him back up with Rivera and say, hey, Rivera's number changed. Can you hook me back up? Or just I'm trying to purchase ---- at first it was just, hey, Carrillo, I'm trying to purchase meth. And Carrillo says, I've got a guy in the Portland area. I'll set you up with Rivera. There's no explanation. It's just seemingly absent. They just sort of conclude that, hey, undercover is out, so CRI-1 is out. But CRI-1 was still having contact after the undercover was out. And so that ---- I mean, that's one of my key arguments for why the affidavit's incomplete. It just doesn't explain why CRI-1 is not going to be effective at the upper levels. And the affidavit says we want the upper-ended levels. Well, here you've got Carrillo selling to CRI-1, Carrillo setting up Rivera with CRI-1. I think that's a big piece. The second part ---- the second big character is CRI-2. And the affidavit simply doesn't ---- the affidavit lays out the facts that on October 6, 2008, 11 days before the Suaretep affidavit is issued, that Rivera, who throughout the affidavit is represented as one of the two main guys, Rivera and Jose Duarte. Rafael Romero Duarte is not in the picture yet, but ---- Mexico at that point, right? That's correct. Yeah. And Rivera shows up in person to CRI-2's place and says, you know, I'm back in town, here's my number, do you want to purchase drugs? He's one of the main guys. But the affidavit shows that these informants had sporadic contact both at the upper level and at the lower level. And so is your theory that the failure to work those informants harder and to make them do more and have more contacts makes the affidavit's showing of necessity inadequate? Is that your theory? In a sense, but I don't even know that I'm saying they have to work harder. The affidavit doesn't say ---- the affidavit doesn't seem to acknowledge that their informants have access to the mid and upper levels. The affidavit sets out the facts that Rivera meets with CRI-2 at his house. The affidavit sets out the fact that Rivera and Jose Duarte are answering the cell phone and sending out runners, but then the affidavit says CRI-2, our confidential informants, have access only to the lowest levels and we haven't penetrated. And it just totally ---- the affidavit totally fails to explain what the facts are in the affidavit itself, which is they did have access to the upper and mid levels. CRI-2 was where they were ---- It's sporadic contact. So it showed these meetings, one or two. And so is that enough or is that sufficient to say that the government didn't make a showing of necessity in the affidavit? Is that your position? Well, I think it's more than that. It's my position, but I mean, I think it's more than that. And they both have sporadic meetings with Rivera and the higher-ups, but CRI-2 has done like 16 controlled purchases, and both CRI-1 and CRI-2 record some calls when they can. They can't always record the calls because they don't always know when they're going to happen. Were the purchasers' purchases with the higher-ups? I thought the purchases were with the runners for the most part. And that's correct. But another point is, and in my brief I talk about Garcia's Villalba, this isn't a case where the street runner is the only contact. In other words, in Garcia Villalba, the guy on the street has the phone. The guy on the street takes the call. The guy on the street delivers the drugs. Here, Rivera and Duarte are taking phone calls. They have pen registers, and they're using pinging, which gives similar data. And Judge Brown notes this, that it gives similar data to what, like, a GPS locator would. They have some limited surveillance on when they're talking on the phone. Duarte and Rivera are not insulated like these other cases have. They're taking the orders and sending the people out. That makes them liable in the conspiracy. This is not ---- But our standard is that the government, the necessity standard, we compare it to get to the whole conspiracy and to gather evidence beyond a reasonable doubt. So it's not just that they could get specific information about runners or have one or two contacts with the higher-ups. They're entitled to get the evidence they need to bring in the whole conspiracy. Right. And I'm not trying to change that, but I also don't want the Court to interpret that as they're entitled to get the best evidence possible. Like in trial, you're entitled to present your best evidence. They're entitled to build an effective case. And the question is whether they could build an effective case on this. And I think they absolutely could. And the source of information is important because, okay, the source of information wouldn't testify. But in the footnote and in a couple places, they laud this source of information as having intimate knowledge of the organization. The source of information has phone numbers of street runners memorized in their head. The source of information has Jose Duarte's personal phone number. The source of information has knowledge about certain intimate things within the organization. He's not going to testify, right? No. He's not going to testify. He fears his life. So how does that help? Because the source of information could say there's nothing in the affidavit saying the source of information says there's these unknown areas we need to investigate. The source of information lays out that there's street runners and that there's Rivera and there's Duarte. And so you could say in the words of Donald Rumsfeld, there's known unknowns that the SOI tells us about. But there isn't. There's no limit placed on the SOI's knowledge. And then there's unknown unknowns, which is phishing. Is it your position that these two informants were able to tell the government all of the transactions and all of the individuals that were involved in the drug trafficking organization when we know from the PIN registers that one of the phones made 15,000 calls over the course of the conspiracy? I think that the CRIs in combination with the SOI would be able with time to identify everyone. Every single transaction and every phone conversation. Not every single transaction, but that's not required to prove the conspiracy. They could make an effective case on a conspiracy. No, you can't. I don't think Wiretap would give them every single transaction depending on. But isn't that the point? I mean, our case law does suggest that particularly when you're investigating a conspiracy that has as many tentacles as this one did, that it's going to be very  sufficient evidence against everyone who's involved at every level. And your argument seems to be that if the government, to use Judge Okuda's phrase, had just worked their informants harder, they could have done it. And yet we're faced with a trained DEA agent who says, look, I've tried these 16 different investigative techniques and we're not getting there after several months of initial investigation. Is it an abuse of discretion for Judge Mossman to look at that showing and defer to the judgment of the case agent who's running the investigation in the face of a 77-page affidavit that explains why we think we need to move to Wiretaps now? I just, I think it is because I don't think my argument is just work them harder. My argument is the affidavit's not explaining why they're not effective. And I'll just quote, finish with Ippolito, if I can. Although the government need not pursue every alternative means of investigation, neither should it be able to ignore avenues of investigation that appear both fruitful and cost effective. It's not unreasonable to expect the government to utilize those methods that appear to be potentially productive. We would flout the statutory intent that Wiretaps be used only if necessary. Were we to sanction a Wiretap simply because the government pursued some normal investigative strategies that were unproductive when more fruitful investigative methods were available, my position is that these were potentially fruitful avenues that they had not completed yet. And so, thanks for that. Okay. All right. Let's hear from the government. May it please the Court, Tom Edmonds for the United States. Your Honor, when Judge Brown undertook review of the necessity issue during the motions to suppress, she credited Special Agent Macrina's 16-month investigation, a 77-page affidavit, that laid out a broad-based conspiracy that went well beyond the confines of Portland, Oregon. I think what's happened here with the defendant in his view of the case is that he has significant blinders on for the breadth of this investigation and the conspiracy that was confronting the investigators in this case. As was laid out in that affidavit very clearly, this case began with a Wiretap in Colorado that intercepted calls from the State of California, an individual by the name of Sanchez who was calling Oregon and Washington, a phone located in this region, hundreds of times, if not more than that, over the course of a period of time. And the focus began here in Portland with Special Agent Macrina's focus on that particular phone which became TT1, a phone that involved the individual by the name of Carrillo. Carrillo was working at parts of this investigation out of Wenatchee, Washington, in another State. California was involved. As the Court recognized in questioning counsel just a moment ago, the toll records on TT1, the phone that was being sought for alone, showed 14,800-some calls in a 3-month period, less than 90 days. There were that many calls. If you do the math, it's over 170 calls per day. This was a broad-based investigation that involved calls not only to other States, but to Mexico. 700 of the calls were to international numbers that were linked with Mexico. So the idea that somehow the informants in this case could have, and I don't agree with his position on that, but somehow that the informants who were working here in Oregon could have given the key to this broad-based conspiracy involving potentially Mexico, California, Washington, and that broad a base, is just ludicrous. It couldn't. Opposing counsel says one of the informants had access to Carrillo, who was the key person, and could have gathered sufficient evidence through that contact had it been developed, had the government pursued that more. Your Honor, Carrillo was contacted through CRI-1 and the undercover officer, S.A. Bujanda, in the latter part of 2007 and early 2008. And there were significant attempts to continue to pursue that contact that went through April of 2008. But as is said at SCR 822 in the agent's affidavit, all the efforts on the part of both the UC and CRI-1 after April 2008 to contact Carrillo had failed. That either calls were made to him and were unanswered, or they didn't have numbers capable of reaching him, or a way that wouldn't jeopardize the investigation. I submit also that the argument that he's making today on CRI-1 was never raised before the district court, before Judge Brown, and including the argument made about the SOI. One has to look carefully at the motion that was filed by defense counsel at the time, but those arguments were not made to Judge Brown, and she was not given the opportunity to specifically address that argument. And I don't think the Court here in the first instance ought to do that. That's why I've urged the plain error standard to those particular questions. Either way, whether the Court reviews it under the plain or clear error fact-finding aspect as to the full and complete statement, I submit that the agent's affidavit with regard to CRI-1, CRI-2, and the SOI was full and complete. One only has to look at Rivera and McGuire, two significant precedents of the circuit concerning wiretap authority, about scrutiny given to information contained in an affidavit about informants. Both those cases involve informants who express fear. And in fact, Rivera says that it's asking more than is required by the law to say why is someone fearful or why won't someone cooperate. Simply stating those facts is sufficient under the law of the circuit. And I submit that all of the information that was contained in the affidavit was full and complete about all those informants. CRI-2's ability to contribute to the investigation was quite local, as we know. He'd done 16 control buys with what was the very lowest level of this organization, and that was the sales component of this in Portland, where at the time of the application in October of 2008, Jose Duarte was in charge and was the one taking the calls on TT-1 and dispatching runners to sell. CRI-2 had made those purchases from runners, but his efforts had gone no farther than this lowest level of the organization, which we know had many other levels above it, all the way out of State and even perhaps out of the country that these investigators were attempting to pursue. But what about the argument that the opposing counsel makes that the SOI, even if he wouldn't testify, knew all of the levels of the operation and would have given the government the ability to track them down? I'm not quite sure where he gets that from, because that isn't evident from the affidavit. The affidavit does contain information that the SOI had provided to Special Agent Macrina. He was a Portland police informant, and all of it was very local. It involved Jose Duarte, statements that Jose Duarte had made, and the information that the SOI provided that's in the affidavit was local and mostly historical, where he either identified phone numbers or he identified individuals who were involved in the case, but no one beyond the confines of Portland. He knew nothing, according to the affidavit, and I don't know where he obtains that argument from, because it just doesn't reside in the four corners of the affidavit that somehow the SOI knew what was going on in Mexico or what was going on in California or what he knew about the source of supply. The cornerstone of Judge Brown's decision, and she spent time specifically addressing this, was that there was necessity for this wiretap to go after the source of supply and the broader conspiracy, and no fewer than seven or eight cases in this circuit have supported necessity where that was the goal, the stated goal of the investigation to go after the broader conspiracy. Defense counsel, in both of his briefs, doesn't even credit that case law or discuss that at all. He seemingly ignores it, and even today tends to confine his argument to what they could have solved as to Portland, Oregon. I don't necessarily agree with him that, short of the wiretap, they would have been able to build an effective case against the local organization, but they certainly weren't required to stop there under the law. The law authorizes them to go beyond that. Mr. Evans, help me with the analysis. Initially, Judge Mossman reviews simply the four corners of the affidavit, but then he makes, as the statute requires, necessity findings as part and parcel of his order authorizing the Title III. Yes, Your Honor. But then once the results of the investigation are known from everything that they did and the case is charged, Judge Brown revisits the necessity question, but she holds an evidentiary hearing at which, I take it, Agent, is it Macarena? Macarena. Macarena testified, and did she hear evidence from anybody else? He didn't testify, Your Honor, and there was no evidence adduced. It was restricted to the documents. There was an affidavit filed by Special Agent Macarena that doesn't have much bearing on this appeal, and I'll explain that very briefly. I recognized with the agents that there was an error made in the initial application concerning the identification of Rafael Romero Duarte, the defendant in this case, as having been in Portland in August of 2008. And when we realized that error, we brought it to the Court's attention, and Judge Brown asked that Special Agent Macarena, who by that time was posted to Washington, D.C. and outside of the country, file an affidavit in lieu of coming to Portland to testify in open court, and that was all agreed to. But that really has no bearing on the appeal. Okay. So I'm still trying to figure out this bifurcated review that we're doing here, because there is a suggestion in the case law that we look at the contents of the affidavit de novo, but we also have to decide whether or not the District Court have used its discretion in making the necessity determination. Is that correct? Yes, Your Honor. It is a two-part stepping stone, I suppose. The de novo review is on the issue of whether or not the affidavit in its four corners is a fully complete statement in compliance with the statute, and whether it, as the statute speaks to, is a reasonable statement of the government's good faith effort to use traditional investigative tactics or its decision to forego such tactics based on the unlikelihood of their success or the probable risk of danger involved with their use, elements that are right out of the statute. And I submit to you that there was certainly no error made by Judge Brown in her factual findings concerning the full and complete statement aspect of this case. Is it correct if I summarize what you just said as we review the affidavit for compliance with the statute in establishing necessity and determine whether the District Court viewing that information abused its discretion in finding necessity? That's correct. I think it's the statute, but also the prevailing case law that exists in the circuit on the full and complete statement issue. And my submission is that there was neither error made by the court in its factual findings, and then certainly there was no abuse of discretion here by neither Judge Mosman nor Judge Brown abused their discretion in finding the necessity existed, particularly when accounting for the very clearly stated goal of the investigation to go off after the broader conspiracy, which, as I've stated here probably too repeatedly, went well beyond the Portland, Oregon confines of the drug activity by this overall organization. I know the Court has not asked questions concerning the sentencing issue that's before us, and I take it from defense counsel's reply brief that he is not challenging the government's submission made in my brief concerning how the trial evidence did fully support Judge Brown's findings. He's briefed it, but as I see it, we review it for clear error since there was no specific objection made to the quantity determination. That's correct. Other than the general statement that I disagree with the jury's findings. If you find that there was no specific objection, which we submitted there was no specific objection made, then I believe the standard of review would be plain error, and otherwise it would be clear error. I'm sorry. I misspoke. I meant plain error. If I said clear error, it's plain error. And I invite the Court to do it either way, because the trial record amply supported the finding that the Court made. The Court relied upon the PSR in making the finding, but the clear error standard goes well beyond that and opens up the record, which I did in the course of my briefing of the case, and there are several different ways, all of them very deferential to the defendant's position that I proposed to the Court that support that there was more than 1.5 kilograms of actual methamphetamine, incredibly deferential to the defendant's position, even taking the amount of mixture that he proposed to the Court in his initial brief and applying the Lopez-Montes formula of the purity levels, and we're still over, well over 1.5 kilograms of actual methamphetamine using his proposed mixture quantity. So I believe there's more than abundant evidence for the Court to have found that the Court properly sentenced the defendant first at base offense level 38 and then in total at 42 after accounting for elevations in the offense level that are not the subject of this appeal. Thank you very much. Thank you. I'll give you a minute on rebuttal. Thank you. Just quickly, I'd like to hit on the three main points. I'd say on the cases, McGuire, Rivera, Canales-Gomez, I think Reed, if the Court examines those cases, the CRIs are all more out of the equation than they are in this case. Now, we may not have an informant as good as, like, Ippolito is like the gold standard of how good an informant could be, but the two informants with the SOI backing them up, I think, put this case in a different position than, I could go through them individually, but it's obvious when you read the cases, either McGuire was the Montana Freeman and there's just paranoia, they can't get in, other cases, CRIs that are in custody or deported or they're scared or unwilling. This case is not any of those. I'd also note on the conspiracy going high up. This case came from the top down with the wiretap in Colorado on Sanchez and Carrillo. They were coming from the top down and not needing to go up. And on preservation, I'd just note that in trial counsel's memo, if you look in there, he raises, he talks about SOIs and confidential informants. Oral argument is perfunctory. I agree, but it's on the four corners of the affidavit. And Brown read the entire affidavit. It's very clear she read it all. Okay. Thank you. Roberts. Thank you both. The case just argued is submitted. The last two cases on the brief, on the calendar, Sherry Parrish v. Michael Astrew and Deborah Thomas v. Michael Astrew are submitted on the briefs. We are adjourned until 9 a.m. tomorrow morning.
judges: Tashima, Tallman, Ikuta